**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **SHANON NARODA WASHINGTON,** | * | |
| **Plaintiff,** | * | |
| v. | * | Case No.: GJH-18-3810 |
| **SGT. BRIAN CARTER,**[1] *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Shanon Naroda Washington brought this *pro se* civil action pursuant to 42 U.S.C. § 1983 challenging his placement on administrative segregation. ECF No. 1. Pending before the Court is Defendant Sergeant Brian Carter's Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion is granted.

**I.   BACKGROUND**[2]

Plaintiff is currently incarcerated at Roxbury Correctional Institution ("RCI") in Hagerstown, Maryland. ECF No. 1 ¶ 3. Defendants Carter and Reel[3] are correctional officers assigned to RCI. *Id.* ¶¶ 4, 5. On June 15, 2018 at 7:00 a.m., Defendant Reel noticed that Paul Hines, an inmate in the cell next to Plaintiff's, had a black eye and swollen jaw. ECF No. 12-2 at 5.[4] Hines then informed Defendant Carter that he was assaulted by Plaintiff. *Id.* at 3. At

---

[1] The Clerk shall amend the docket to reflect Defendant Carter's full name.
[2] Because this motion is construed as a motion for summary judgment, the facts are either undisputed or viewed in the light most favorable to Plaintiff as the non-moving party.
[3] Defendant Reel has not yet been served. The Complaint will be dismissed without prejudice, so this deficiency need not be rectified at this stage.
[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

approximately 7:45 on the morning of June 14 or 15, 2018,[5] Defendant Reel approached Plaintiff's cell and ordered him to pack his belongings. ECF No. 1 ¶ 6. Defendant Reel told Plaintiff that he was moving to administrative segregation because he had physically assaulted Hines. *Id.*

At his adjustment hearing on August 1, 2018, Plaintiff was found not guilty of the assault. ECF No. 12-2 at 16. Nonetheless, he remained on administrative segregation until August 22, 2018. *Id.* at 19. While on administrative segregation, Plaintiff lost his sanitation job. *Id.* at 4.

On August 15, 2018, Plaintiff filed a request for an Administrative Remedy Procedure ("ARP") asking for a thorough investigation regarding Defendants Reel and Carter's conduct toward him. *Id.* at 21. Plaintiff stated that in 2017, Defendant Carter fired him from a job in ground maintenance, and on July 15, 2018, Defendant Reel issued him a "ticket", supported by Defendant Carter's statements, charging Plaintiff with misconduct. *Id.* He also stated that on a separate occasion, Defendant Reel asked unnamed prisoners if they could beat him up. *Id.* The ARP was dismissed for procedural reasons because it contained multiple unrelated issues. *Id.* Plaintiff was given an opportunity to resubmit the ARP by August 30, 2018 by presenting one issue or a reasonable number of closely related issues, including the names of witnesses and copies of any reports. *Id.*

Plaintiff resubmitted his ARP request on August 24, 2018; he alleged that he remained under administrative segregation despite the hearing officer's decision that he was not guilty of assaulting Hines. *Id.* at 22–23. He also claimed that he suffered cruel and unusual punishment due to Reel and Carter's use of "a fabricated, false statement with intentions to knowingly display a reckless disregard for the truthfulness of the matter", in violation of his Eight and

---

[5] Plaintiff states that Reel approached him on June 15, 2018, ECF No. 1 ¶ 6, but the Notice of Assignment to Administrative Segregation appears to have been served on Plaintiff on June 14, 2018. ECF No. 12-2 at 2.

Fourteenth Amendment rights. *Id.* at 23. The ARP was investigated by Lieutenant Rupp, who interviewed Hines and Defendants Carter and Reel. *Id.* at 24. He concluded that Defendants Carter and Reel did not falsify documents and acted in good faith to protect another inmate. *Id.* at 23. The ARP was dismissed on September 19, 2018. *Id.* at 22.

On October 18, 2018, Plaintiff appealed the dismissal. *Id.* at 28. The appeal was dismissed on November 28, 2018 because Plaintiff had not provided "any additional evidence to substantiate [his] claim that staff had [him] placed on Administrative Segregation as 'inflicting punishment.'" *Id.* at 29. There are no records that indicate Plaintiff filed any grievance or further pursued his allegations with the Inmate Grievance Office ("IGO"). ECF No. 12-4 ¶ 2. In his unverified opposition response, Washington does not state affirmatively that he filed with the IGO; instead, he states that:

> [r]eceiving no response from IGO amounts to exhaustion of remedies. No response from IGO is provided. Likewise, no independent investigation was made on the merits. It is noted that the IGO forms have the IGO address 200 Subbrook Station on them, and the new address is 6776 Reisterstown Road and the Plaintiff mailing a grievance appeal to the address affixed to the forms, (without the Division establishing the new address, or having a forward address) is not the fault of plaintiff.

ECF No. 16 ¶ 24.

## II. STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (*abrogated on other grounds*). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Board of*

3

> *Psychiatry and Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require a defendant to establish "beyond doubt" that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 561. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

When, as here, matters outside the pleadings are presented to the Court, a 12(b)(6) motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(b)). A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. However, no genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court explained that, in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-

moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, this court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## III. DISCUSSION

Defendant Carter contends that Plaintiff has failed to exhaust his administrative remedies and therefore his claims must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides, in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).[6]

The purpose of the exhaustion requirement includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (stating that exhaustion means providing

---

[6] Prison conditions encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

6

prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners "pursue administrative grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process." *Chase*, 286 F. Supp. 2d at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating that prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the inmate; rather, the failure to exhaust administrative remedies is an affirmative defense to be proven by defendants. *See Bock*, 549 U.S. at 215–16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). A claim that has not been exhausted may not be considered by this Court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *See Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, a prisoner must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see also Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999). But the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

The grievance system for the Maryland Department of Public Safety and Correctional Services ("DPSCS") is set forth at MD. CODE ANN., CORR. SERVS. ("C.S."), §§ 10-201 *et seq.* (2008 Repl. Vol.). *See also* MD. CODE REGS. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the ARP define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

There is an established ARP process that applies to all Maryland prisons. *See* COMAR 12.02.28.01 *et seq.* When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. First, a prisoner is required to file his initial ARP with his facility's "managing official," *see* COMAR 12.02.28.09(B)(2), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and is defined under C.S. § 1-101(k) as "the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

Next, if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame, the prisoner has thirty days to file an appeal to the Commissioner of Corrections. COMAR 12.02.28.14(B)(5). If the Commissioner of Corrections denies an appeal, the prisoner has thirty days to file a grievance with the IGO. C.S. § 10-206(a); COMAR 12.02.28.18; *see also* COMAR 12.07.01.05(B). If the Commissioner fails to respond, the grievant shall file any appeal within thirty days of the date the response was due. COMAR 12.07.01.05(B)(2).

When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance "is determined to be wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). If a hearing is deemed necessary by the IGO, however, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07–.08. The conduct of such hearings is governed by statute. C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1).

Here, the uncontested record shows that Plaintiff abandoned the grievance process prematurely by failing to file a grievance with the IGO after his ARP appeal was denied. Moreover, there is no evidence that this defect was the result of action or inaction of prison officials. He has therefore failed to properly exhaust administrative remedies, thwarting the

purpose of administrative exhaustion. He must fully exhaust his administrative remedies before this Court can review his claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant Carter's Motion to Dismiss or, in the Alternative, for Summary Judgment is granted. The Complaint is dismissed without prejudice. A separate Order shall issue.

Date: <u>November  27, 2019</u>           __/s/_____
GEORGE J. HAZEL
United States District Judge